WERNER MACHINERY COMPANY,
Plaintiff,

v.

NATIONAL COOPERATIVES, INC.,
Defendant.

No. 67–C–394.

United States District Court
E. D. Wisconsin.

Sept. 12, 1968.

Ross, Stevens, Pick & Spohn, Madison, Wis., for plaintiff, Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich., of counsel.

Arnold, Murray & O'Neill, Milwaukee, Wis., for defendant.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a suit for patent infringement. The plaintiff alleges that certain machinery sold by Universal Milking Machine Division, a department of the defendant

company, infringes patent no. 2,895,450 held by the plaintiff. The infringing sales are alleged to have been made from the defendant's office in Wales, Wisconsin.

The defendant has now made motions challenging venue and service of process. The motions ask for dismissal of the suit, or, in the alternative, transfer to another district.

## I. IS THERE VENUE IN THIS DISTRICT?

Venue in a patent infringement action is governed by 28 U.S.C. § 1400(b). Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957). This section reads as follows:

> "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Residence is defined as the state of incorporation. See Fourco Glass Co. v. Transmirra Products Corp., supra; since this defendant is incorporated in the District of Columbia, venue in this district must be predicated on the second clause of § 1400(b), rather than the first. We must therefore determine whether the defendant has a "regular and established place of business" in this district and also whether alleged acts of infringement appear to have been committed here.

It is uncontroverted that at least three units which allegedly infringe the plaintiff's patent were sold in Wales, Wisconsin from July 1, 1967 to December 31, 1967. This satisfies the court that "acts of infringement" took place in this district. See Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622, 624 (7th Cir. 1965), where the court held that acts of infringement had occurred because "Casco admitted * * * that it sold two of the accused devices during the 1963 Houseware Show * * *."

The requirement that a corporation have a "regular and established place

of business" in the district has received a somewhat narrow and limiting interpretation. Mid-Continent Metal Products Co. v. Maxon Premix Burner Co., 367 F.2d 818 (7th Cir. 1966). Something more than "doing business" is required. See Knapp-Monarch Co. v. Casco Products Corp., supra; and it has been held that plaintiff must establish that

> "defendants had an established place at which they conducted business and that such business was conducted with such a degree of regularity and permanence as to compel the conclusion that the place was 'a regular and established place of business'." Railex Corporation v. White Machine Co., 243 F.Supp. 381, 385 (E.D.N.Y.1965).

See also Mastantuono v. Jacobsen Mfg. Company, 184 F.Supp. 178 (S.D.N.Y. 1960) and Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38, 47 (S.D.N.Y.1964), where the test applied was whether

> "[t]here has been a sufficient showing of a systematic, regular and continuous course of business activity carried on from a permanent location in New York City * * *.'

With these guidelines in mind, the court will examine the facts in the case at bar. The affidavit of Omer L. Majerus, the defendant's sales manager, and the defendant's answers to the plaintiff's interrogatories show the following: Universal Milking Machine Division is merely a department (and not a separate corporate structure) of the defendant devoted to manufacturing, with its principal place of business in Albert Lea, Minnesota; that defendant has owned Universal Milking Machine since 1943; that the defendant has operated a small sales and service operation under the Universal name in Wales, Wisconsin since 1960; that because of a rapid decrease in dairy farmers in the area, the defendant has periodically attempted to dispose of this office, and is in the process of doing so again; that the operation in Wales is conducted in a building owned by Universal; that one male employee and one part time secretary are employed at this

office; that defendant bills Universal for rent, and Universal pays the taxes; that there is no tenant identification in the building itself, but in front there is a sign reading "Universal Milking Machine Equipment"; that the office is listed in the phone directory; that a bank account for deposits is maintained in the defendant's name in Wales; that the Wales office is closed two days a week; that the office is under the control and supervision of Mr. Majerus; that in addition to the building, the defendant owns a truck in Wales with the inscription "Universal Milking Machine of National Cooperatives, Inc." and secretarial equipment; that during the fiscal period of July 1, 1966 to June 30, 1967, the business at Wales amounted to $42,000; and that a sales inventory is maintained at Wales for repair and replacement parts. It also appears that orders are accepted and completed at Wales, although Mr. Majerus states that "substantial" orders are accepted only at Albert Lea. No records or files, other than "records of local interest", are kept at Wales.

The defendant, citing three recent opinions of the seventh circuit court of appeals, insists that these facts are not sufficient to establish that the defendant maintains a "regular and established place of business" in Wales. The three cases cited are Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. 1965); Knapp-Monarch Co. v. Dominion Electric Corp., 365 F.2d 175 (7th Cir. 1966); and University of Illinois Foundation v. Channel Master Corp., 382 F.2d 514 (7th Cir. 1967).

An examination of these cases shows that they differ from the present action in one important respect. They all involved situations where the defendants' sales representative in the district was authorized merely to solicit orders which were then accepted by the defendants' home offices located outside of the district. Even though there are a few points of similarity between those cases and the one at bar, it is apparent that the solicitation factor was the key that led the court in all three cases to hold as it

did. A long line of cases stemming from the supreme court's opinion in W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), hold that maintenance of a sales representative who solicits (but does not complete) sales does not meet the statutory test.

■ On the other hand, Mr. Majerus' affidavit establishes that the defendant's employee at Wales does more than solicit business; he has the authority to and does complete sales. This is exemplified by the fact that Mr. Majerus' affidavit admits that three allegedly infringing units were sold at Wales during the last half of 1967. The fact that only "small" orders are accepted at Wales is not controlling; the case at bar is not governed by the holdings in the two *Knapp-Monarch Cases* and *Channel Master*. While the fact that the defendant's employee at Wales completes sales of merchandise is important, it does not in itself determine that the Wales office is a "regular and established place of business" within the *Railex* and *Watsco* tests. But other factors persuade me that the requirements of § 1400(b) have, in fact, been met.

The building at Wales is owned by the defendant, and this office has existed since 1960; the personnel at Wales are employed by the defendant, and the office is under the control and supervision of Mr. Majerus, the defendant's sales manager; and the Wales office did over $40,000 worth of business in fiscal 1966–67. The phone listing and building and truck identification, along with the presence of a bank account, while not controlling, also add weight to this conclusion.

■ The defendant urges that there is significance to the fact that the operation at Wales is in a "closing up process". However, the fact that the defendant may dispose of its Wales operation at some time in the future does not contradict a finding that it had, at the commencement of this suit, a "regular and established place of business" in this district. See Brevel Products Corp. v. H & B Ameri-

can Corp., 202 F.Supp. 824 (S.D.N.Y. 1962).

This court therefore holds that under 28 U.S.C. § 1400(b), venue is proper in this district.

## II. SERVICE OF PROCESS

The defendant also alleges that service of process is invalid because it was not in accordance with 28 U.S.C. 1694, which states that

"In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be upon his agent or agents conducting such business."

The affidavit of plaintiff's attorney shows that service was attempted on Kermit Heistad, who was listed with the secretary of state of Wisconsin as National Cooperative's registered agent. The United States marshall, attempting service, learned that Mr. Heistad was no longer employed by the defendant and returned the service to plaintiff's attorney. The latter then had the marshall in the western district of Wisconsin make service upon the secretary of state pursuant to rule 4(d) (7), Federal Rules of Civil Procedure and Wis.Stat. § 180.825 (1965).

In my opinion, this manner of service was proper. 28 U.S.C. § 1694 is not exclusive, and the plaintiff may also effect service pursuant to rule 4, Federal Rules of Civil Procedure. Shelton v. Schwartz, 131 F.2d 805 (7th Cir. 1942); Ruddies v. Auburn Spark Plug Co., 261 F.Supp. 648 (S.D.N.Y.1966).

Since venue and service were both proper, the defendant's motion to dismiss must be denied.

## III. SHOULD VENUE BE TRANSFERRED TO MINNESOTA?

The defendant has also moved to transfer this action to the district court for the district of Minnesota, second division, under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

Transfer cannot be made under § 1406 (a) because that statute is applicable only if venue is originally laid in the wrong district.

28 U.S.C. § 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Transfer pursuant to § 1404 (a) is within the discretion of the court, and the burden rests with the party seeking the transfer. Huisman v. Geuder, Paeschke & Frey Co., 250 F.Supp. 631 (E.D.Wis.1966). Where the transfer would merely shift the inconvenience or when the equity is only slightly in favor of the movant, the plaintiff's choice of forum must not be disturbed. De Luxe Game Corp. v. Wonder Products Co., 166 F.Supp. 56, 61 (S.D.N.Y. 1953).

The reasons advanced by the defendant for requesting transfer are that its records are kept in Albert Lea, Minnesota, and that five prospective witnesses reside in that area. No further information is supplied. On the other hand, plaintiff points out that its witnesses will be from Wisconsin and Michigan, and that none will be from Minnesota. We also note that the plaintiff is a Michigan corporation with its principal place of business in Grand Rapids, Michigan. Upon these facts, this court holds that the movant has failed to satisfy its burden.

Now, therefore, it is ordered that the defendant's motions for dismissal and for transfer of venue be and hereby are denied.