**AQUARIUM PHARMACEUTICALS, INC.**

v.

**INDUSTRIAL PRESSING & PACKAGING, INC.**

Civ. A. No. 73-572.

United States District Court, E. D. Pennsylvania.

May 8, 1973.

M. Stuart Goldin, Isenberg, Goldin & Blumberg, Philadelphia, Pa., for plaintiff.

John A. Erich, Reinhart, Boerner, Van Deuren & Norris, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

The defendant in this diversity action, Industrial Pressing & Packaging, Inc. ("Industrial"), is incorporated and has its principal offices in the State of Wisconsin. Plaintiff, Aquarium Pharmaceuticals, Inc. ("Aquarium"), is a Pennsylvania corporation with its principal offices located in Perkasie, Pennsylvania. Aquarium alleges that the defendant manufactured and supplied them with certain types of tablets for use in the tropical fish industry, that the product was defective, and that it is entitled to the appropriate damages.

Industrial has requested this Court to dismiss the suit, arguing that, as it is a non-resident corporation which does not do business in the Commonwealth, there is no adequate basis for the imposition of in personam jurisdiction given the facts of the instant case. In the alternative, Industrial asks us to transfer this matter to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

Defendant was served with a summons and complaint on March 14, 1973 through service on the Secretary of the Commonwealth pursuant to an Order of this Court.

In its accompanying affidavit, Industrial states that it maintains no offices in Pennsylvania and has not done any business in the State other than the making of a single shipment of work-in-progress inventory belonging to the plaintiff upon telephone request by the plaintiff to their Wisconsin office. Thereby, it is contended that such limited activity does not constitute "doing business" under the relevant statutes and case law and that dismissal is appropriate.

I

Pennsylvania has only recently amended its "long-arm" statute and this amended version has not, to our knowledge, been considered by any court as of this date.

The present statute, which became effective on February 13, 1973, in relevant part states:

(a) General Rule.—Any of the following shall constitute "doing business" for the purposes of this chapter:

.  .  .  .  .  .

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

42 Pa.S. § 8309.

Section 8309 amends 15 P.S. § 2011(C), adopted by the Legislature in 1968, which reads as follows:

For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute "doing business." For the purposes of this subsection, the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.

It is Industrial's position that both statutes are identical in substance and that, since a single shipment of merchandise into Pennsylvania did not subject a corporation to the jurisdiction of Pennsylvania court under a former version of § 2011(C), Nelson v. Doll Furniture Co., 304 F.Supp. 159 (E.D.Pa.1969), dismissal is likewise warranted, given similar facts, under § 8309.

■ We disagree with defendant's reading of the *Nelson* decision and conclude that the actions of Industrial clearly fall within the ambit of § 8309, the present "long-arm" statute, even though they might not have been sufficient to confer jurisdiction under an earlier version of § 2011(C).

As we read § 2011(C) and § 8309 together, it is obvious that a substantial alteration has been made as a result of the recent amendment. Under the terms of § 2011(C), the "doing of a single act" "for the purpose of thereby realizing pecuniary benefit" had to be read in conjunction with the following clause, which required a finding that such act was done "with the intention of thereby initiating a series of such acts," before jurisdiction could be taken by courts of the Commonwealth. In § 2011(C), the final sentence, which stated that "the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act," was used only in a definitional sense in that it referred back to the term "single act" in the previous clause. Therefore, shipment of merchandise into the Commonwealth, by itself, was not sufficient to permit the courts to take jurisdiction unless the shipment was made with the intention of initiating a series of such acts.

■ The amended statute, § 8309, extends the reach of § 2011(C) by transforming this last sentence of § 2011(C) from a definitional clause which was to be read in conjunction with other requirements into an independent clause upon which jurisdiction could be founded. No longer is intention a necessary prerequisite to the imposition of jurisdiction; the fact of shipment into the Commonwealth, standing by itself, subjects the acting corporation or entity to the reach of the § 8309 "long-arm" statute.

Such a reading of § 8309 is consistent with the clear intention of the Legislature, over the past decade, to extend the reach of the "long-arm" statute, as is evidenced by an examination of the recent amendments of that statute in 1963 and 1968. See 15 P.S. § 2011(B) (C), P.L. No. 703, §§ 1, 2 (1963), as amended, 15 P.S. § 2011(C), P.L. No. 216, § 54 (1968), as amended, 42 P.S. §

8309, Act 1972, No. 271, § 1 (1972); Gorso v. Bell Equipment Corp., 476 F.2d 1216 (3d Cir. 1973).

Numerous courts have stated that the public policy of Pennsylvania, as expressed by its "long-arm" statute, is to extend in personam jurisdiction to the full measure consistent with due process standards. Scafati v. Bayerische Motoren Werke Ag, 53 F.R.D. 256, 258 (W.D.Pa.1971); Wenzel v. Morris Distributing Co., 439 Pa. 364, 266 A.2d 662 (1970). The 1972 amendment only serves to further reinforce this conclusion.

It must be conceded that the actions of Industrial within the Commonwealth have been extremely minimal. Possibly, under the earlier "long-arm" statute, we would be inclined to dismiss this action. In Nelson v. Doll Furniture Co., *supra*, the Court concluded that shipment of $79.98 worth of chemicals into the State was insufficient, under § 2011(C) as it read after *the 1963 amendment,* to premise in personam jurisdiction. The 1963 statute required "entry" into the Commonwealth and was interpreted by the courts to necessitate "the physical presence of agents or property." Cecere v. Ohringer Home Furniture Co., 208 Pa. Super. 138, 147, 220 A.2d 350, 356 (1966). As a result, the burden upon the plaintiff was a heavy one and corporate activities of a substantial nature were found to be outside of the reach of the 1963 statute. *See* Optico Corp. v. Standard Tool Company, 285 F.Supp. 46 (E.D.Pa.1968) (sales by defendant averaging $150,000 annually and additional services does not subject corporation to personal service and jurisdiction); Rachelson v. E. I. duPont deNemours & Co., 257 F.Supp. 257 (E.D.Pa.1966) (distribution and sale of products); Miller v. Kiamesha-Concord Inc., 420 Pa. 604, 218 A.2d 309 (1966) (presence of independent sales representatives). But, as discussed above, the entry requirement was deleted in 1968 and further liberalization took place in 1972. Decisions involving the latest version of § 2011(C) are consistent with our conclusion that

Industrial is amenable to service in this instance, *see* Smiley v. Gemini Investment Corp., 333 F.Supp. 1047 (W.D.Pa. 1971); Gorso v. Bell Equipment Corp., 330 F.Supp. 834 (W.D.Pa.1971), under the provisions of § 8309.

## II

▇ Industrial next argues that the Pennsylvania "long-arm" statute, if interpreted to cover this case, is unconstitutional in that it would be contrary to due process standards established by decisions of the United States Supreme Court. We disagree.

The landmark decision in this area is the oft-quoted International Shoe Co. v. Washington case, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Chief Justice Stone there stated:

"... due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Id.* at 316, 66 S.Ct. at 158 (citations omitted).

Following *International Shoe,* a number of decisions have undertaken the onerous task of attempting to determine whether or not the "minimum contacts" of a foreign corporation with a particular state were sufficient to make that corporation amenable to process in that state. *See, e. g.,* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Such a determination must inevitably be made on an *ad hoc* case-by-case basis and not by the application of a mechanical rule. Campbell v. Triangle Corp., 336 F.Supp. 1002 (E.D.Pa.1972). However, these distinctions must necessarily be made only after due consideration is given to the significant public policy considerations which are served by the concept of substituted service. These considerations were persuasively enunciated by Mr. Justice

Black in his opinion for the Court in *McGee:*

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee v. International Life Insurance Co., *supra,* 355 U.S. at 222–223, 78 S.Ct. at 201.

Since *McGee* was decided, over 15 years ago, the wisdom of Justice Black's observations has become self-evident. The business of this Nation is rarely localized in this age of mass transportation and rapid communication. The growth of the conglomerate and of giant national and international industrial and economic enterprises and their involvement in every aspect of this country's affairs have broken down and, in many instances, obliterated both the import of state boundaries and the basic rationale which has, heretofore, limited the power of the states to acquire jurisdiction over business entities that engage in commercial activities with citizens of that state.

Furthermore, the traditional notions of "fair play" and "substantial justice" which are of immediate concern to us are not static and unchanging concepts to be applied in a mechanical fashion by the courts. Rather, they are formulations which must be defined in light of the constitutional, economic, and social realities of the 1970's and not of an earlier decade in our history.

States have always had a legitimate and substantial interest in safeguarding the rights and property of their citizens. It is not unreasonable for them to expect foreign businessmen who involve themselves, to one degree or another, in commercial transactions with citizens of their state to accept the corresponding burden of accepting service and defending themselves in a court of that state.

In this light, and under the facts before us, the protection afforded by § 8309 does not offend our sense of fair play and equal justice. So long as the requisite elements of procedural due process are met by the applicable statutes,[1] we cannot discern any justification for permitting persons who voluntarily avail themselves of the benefits of this Commonwealth to avoid the jurisdiction of the Pennsylvania courts.

### III

In connection with Industrial's motion, made in the alternative, to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Wisconsin, we do not perceive any reason to justify the authorization of such action.

Industrial has supplied this Court with an affidavit which states that serious inconvenience, due to the Wisconsin location of both its offices and its prospective witnesses, would result if transfer were not permitted. In its affidavit, Aquarium states, to the contrary, that it would be inconvenienced by any transfer due to the presence of its relevant documents and witnesses in this district.

Although the plaintiff's choice of forum is not necessarily controlling, Triangle Industries v. Kennecott Copper Corp., 325 F.Supp. 150, 152 (E.D.Pa. 1971), great weight is to be given to the plaintiff's choice and the defendant has a heavy burden of showing both a strong balance of inconvenience and that the interest of the statute will be better subserved by an alternate forum. Weinberger v. Retail Credit Co., 345 F.Supp.

---

1. See 42 Pa.S. § 8302 (1972).

**446**

165, 168 (E.D.Pa.1972); Plum Tree, Inc. v. Rouse Co., 343 F.Supp. 667, 669 (E.D.Pa.1972); Bogosian v. Gulf Oil Corp., 337 F.Supp. 1230, 1232 (E.D.Pa. 1972).

■ Defendant Industrial has clearly failed to sustain the requisite burden which the case law imposes upon him. Transfer in this instance would merely shift the inconvenience from the defendant to the plaintiff. And where there is present an equitable standoff, or even in those situations where the argument for transfer is only slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed. *See* Werner Machinery Co. v. National Cooperatives, Inc., 289 F.Supp. 962, 965 (E.D.Wis.1968). Furthermore, the fact that both the plaintiff's place of business and the place where the complained of transaction occurred are in this district is entitled to great weight by this Court in determining a motion under § 1404 (a). Fitzgerald v. Central Gulf S. S. Corp., 292 F.Supp. 847, 849 (E.D.Pa. 1968); *see* Ross v. Tioga General Hospital, 293 F.Supp. 209, 211 (S.D.N.Y. 1968). Therefore, we will accept the plaintiff's choice of forum, and, accordingly, deny Industrial's motion to transfer.