**Clifford BENN**

v.

**LINDEN CRANE COMPANY, et al.**

**Civ. A. No. 70–542.**

United States District Court,
E. D. Pennsylvania.

Dec. 28, 1973.

---

Robert Land, Philadelphia, Pa., for plaintiff.

John H. Lewis, Jr., Philadelphia, Pa., for defendants.

## SUPPLEMENTAL OPINION AND ORDER

VanARTSDALEN, District Judge.

On February 22, 1968, plaintiff, Clifford Benn, a Pennsylvania citizen, was injured while working at a construction jobsite in Philadelphia, Pennsylvania. Alleging malfunction of a tower crane as the cause of his injury, plaintiff instituted suit in this district court against several defendants, including Linden-Alimak, the asserted manufacturer of the crane. Linden-Alimak is neither incorporated under the laws of Pennsylvania nor registered to do business in the state. It is a foreign corporation incorporated under the laws of Sweden with its principal place of business in Vasteras, Sweden.

Pursuant to Federal Rule 4(d)(7), (e) and ⟨f⟩ which permits effective service of process beyond the territorial limits of the state in which the district court is held whenever authorized by a statute of the United States or the state in which the district court is held, plaintiff served process on Linden-Alimak under Section 2011, subd. B of the former Pennsylvania "long-arm" statute. Pa. Stat. tit. 15 § 2011, subd. B. Section 2011, subd. B provided for extraterritorial service of process over foreign corporations "doing business" within the state as defined by Section 2011, subd. C. Although this statute was repealed on February 13, 1973, it was in effect on March 12, 1970, the day service of process was first attempted on Linden-Alimak. Linden-Alimak thereafter challenged this service of process alleging that it was not "doing business" within Pennsylvania under the terms of Section 2011, subd. C and, therefore, not amenable to extraterritorial service of process under the "long-arm" provision. On April 30, 1971, this court denied Linden-Alimak's motion to dismiss for lack of personal jurisdiction after a factual finding that Linden-Alimak was "doing business" in the state under Section 2011, subd. C. Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971). In March, 1973, the Third Circuit delivered the opinion of Gorso v. Bell Equipment Corporation, 476 F.2d 1216 (3d Cir. 1973), which ascribed a narrower jurisdictional scope to Section 2011, subd. C than announced in Benn. In view of that decision, I suggested that Linden-Alimak file a renewed motion to dismiss for lack of jurisdiction. Linden-Alimak did so file and this court, on May 25, 1973, vacated the prior order of April

30, 1971 and granted Linden-Alimak's motion to dismiss.

In the interim, Pennsylvania repealed Section 2011 and enacted a new "long-arm" statute providing for extraterritorial service of process over foreign corporations and nonresident individuals.[1] Pa.Stat. tit. 42 §§ 8301–8311 (Supp. 1973–1974). This new statute went into effect on February 13, 1973. Plaintiff Benn now seeks to secure *in personam* jurisdiction over the defendant Linden-Alimak by effectuating service under the new statute.[2] Linden-Alimak contests the propriety of such action and currently moves for dismissal of the complaint for lack of jurisdiction.

In addressing this motion, several issues are raised. In order of treatment they are:

1. Does the new statute govern the validity of the re-service?

2. If so, are the statutory elements satisfied?

3. If so, does the application of the statute in the context of this case violate the Constitutional requisites of due process?

4. If jurisdiction can be extended, is the re-service on Linden-Alimak timely?

## 1. APPLICABILITY OF THE NEW "LONG-ARM" STATUTE.

In the instant case, the cause of action arose and the complaint was filed prior to the effective date of the new "long-arm" statute. However, the re-service currently challenged was made after that date. This chronological fact places the applicability of the new statute in issue. The question posed is whether the validity of the re-service is governed by Section 2011 of Title 15, the law in effect at the time of the accrual of the cause of action and the fil-ing of the complaint, or Sections 8301–8311 of Title 42, the law in effect at the time re-service was made. In the past, the federal and state courts have consistently judged the validity of service according to the "long-arm" statute in effect at the time service is made. *See, e. g.,* Flaherty v. United Engineers & Constructors, Inc., 191 F.Supp. 661 (E. D.Pa.1961); Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 240 A.2d 505 (1967). Basically the courts have concluded that service of process statutes are only procedural provisions and do not create or affect individual substantive rights. *Flaherty, supra,* 191 F.Supp. at 663; *Myers, supra,* 429 Pa. at 182–184, 240 A.2d 505. Consequently, the rule developed that, in the absence of any statutory expression to the contrary, the validity of service was to be governed by the law in effect at the time service is made rather than the law in effect at the time of the accrual of the cause of action or the filing of the complaint. *Id.* Furthermore, this rule was followed irrespective of whether the law in effect prior to service would have validated or invalidated the service. *Flaherty* and *Myers* provide excellent illustrations. In *Flaherty,* service was permissible under a "long-arm" provision in effect at the time the cause of action arose. Before service was made, however, the provision was deleted. The court refused to apply the former law holding that service statutes are procedural and therefore in the absence of a statutory reservation preserving the former method of service, the validity of service must be assessed solely by the law in effect at the time of service. In *Myers,* the defendant was not amenable to service of process under the law in existence at the time of the accrual of the cause of action and the filing of the complaint. However, nine days before service was made, the

---

1. The new statute also repealed the former "long-arm" provisions which dealt with extraterritorial service over nonresident individuals, Sections 341–346 of Title 12. Pa. Stat. tit. 12 §§ 341–346, Acts 1970, July 1, P.L. 444, No. 152, §§ 1–6.

2. On June 27, 1973, this court granted plaintiff's motion for authorization to serve under the new law and service was sent to Linden-Alimak by registered mail on July 24, 1973 and received July 31, 1973.

"long-arm" statute was significantly amended and as amended it allowed the service in question. The court held that the validity of service was to be determined according to the amended law as it was the law in effect at the time service was made. With respect to the instant case, the re-service in question was sent to Linden-Alimak by registered mail on July 24, 1973 and received July 31, 1973. The new Pennsylvania "long-arm" statute went into effect February 13, 1973. Based on the background of judicial precedent on this point, I conclude that the new "long-arm" statute is procedural. There being no statutory expression to the contrary, the new statute governs the validity of the re-service in this case as it is the law in effect at the time re-service was made. This result obtains even though service was not authorized under the statute in effect at the time of the accrual of the cause of action and the filing of the complaint.

 It should be noted that this holding does not offend the corollary rule enunciated under the former statutes that the law in effect at the time of service continues to control the jurisdictional issue even though subsequent to that service and at the time of decision, a new statute or amendment has been enacted. *Gorso, supra*, 476 F.2d at 1223, n. 6; McCully-Smith Associates, Inc. v. Armour and Company, 349 F.Supp. 694, 695–696 (W.D.Pa.1972); Nelson v. Doll Furniture Company, 304 F.Supp. 159, 161 (E.D.Pa.1969). In those cases, the focus properly remained on the old law as no attempts were made to re-serve after passage of the new law. After noting that no re-service had been attempted under the new law, the *Gorso* court stated that "[w]e do not believe that ineffective service under the old statute can be validated merely by the subsequent passage of a new jurisdictional statute with more inclusive provisions." *Gorso, supra*. In the instant case, however, re-service under the new law has been made and, therefore, that law, not the former, controls the case.

## 2. STATUTORY COMPLIANCE WITH THE NEW STATUTE.

Linden-Alimak is neither incorporated under the laws of Pennsylvania nor registered to do business in the state. Plaintiff therefore, seeks to serve process pursuant to Section 8302(a) of the new law which provides in pertinent part:

> Any foreign corporation which *shall have done any business in this Commonwealth* without procuring a certificate of authority . . . shall be conclusively presumed to have designated the Department of State . . . to accept, on its behalf, service of process *in any action arising within this Commonwealth.*

Pa.Stat. tit. 42 § 8302(a) (Supp. 1973–1974) (emphasis added). Essential to this provision is a finding that the defendant has "done business" within the state as that term is defined in Section 8309(a). That section states:

> Any of the following shall constitute "doing business" for the purposes of this chapter:
>
> (1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>
> (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (3) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>
> (4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

(5) The ownership, use or possession of any real property situate within this Commonwealth.

Pa.Stat. tit. 42 § 8309(a) (Supp.1973–1974).

Since this court previously held that Linden-Alimak was not "doing business" under the terms of Section 2011, subd. C, the predecessor of Section 8309(a) under the old foreign corporation "long-arm" statute, a comparative statutory analysis is appropriate to determine if the new law mandates a different result. Section 2011, subd. C read, after amendment in 1968:

> For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute "doing business." For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.

Pa.Stat. tit. 15 § 2011, subd. C, as amended, Acts 1968, July 20, P.L. 459, No. 216, § 54.

Under this repealed section, two types of conduct established "doing business": the doing of a series of acts for the purpose of realizing pecuniary benefit or the doing of a single act for such purpose with the intention of initiating a series of such acts. In order to establish "doing business" under this "series . . . or single act" language, "a systematic course of conduct as contrasted with isolated or sporadic occurrences" had to be demonstrated. Gorso v. Bell Equipment Corporation, 476 F.2d 1216, 1221 (3d Cir. 1973), citing Myers v.

Mooney Aircraft, Inc., 429 Pa. 177, 185, 240 A.2d 505 (1967). The final sentence concerning the direct or indirect shipment of merchandise into the state, which was added by amendment in 1968, was not cited as an independent basis of "doing business" but was used merely in a definitional sense in that it exemplified a single act done for the purpose of realizing pecuniary benefit with the intention of initiating a series of such acts. Aquarium Pharmaceuticals, Inc., v. Industrial Pressing & Packaging, Inc., 358 F.Supp. 441, 443 (E.D.Pa.1973). As a consequence of this subordination, the Gorso court held that the addition of the "direct or indirect shipment" language did not affect the basic "doing business" requirement under the primary "series . . . or single act" language. Gorso, supra, 476 F.2d at 1221. Therefore, the direct or indirect shipment of merchandise into the state did not constitute "doing business" without a showing of "systematic and continuous conduct" as required under the "series . . . or single act" language. Id. at 1221–1223; Aquarium, supra, 358 F.Supp. at 443.

Under the new "long-arm" statute the direct or indirect shipment of merchandise has been severed from the "series . . . or single act" language which is now contained in Section 8309(a)(1) and (2). Subsection (a)(3) makes "the shipping of merchandise directly or indirectly into or through this Commonwealth" a separate and distinct form of "doing business" without any requirement that shipment be made with the intention of initiating a series of such acts. Aquarium, supra, 358 F.Supp. at 443.

With this statutory framework, it is appropriate to determine the current jurisdictional issue. The statutory relaxation of the "direct or indirect shipment" requirements combined with the supplemental jurisdictional facts recently filed by affidavit [3] make the in-

---

3. The affidavit was filed by co-defendant Heede International, Inc. in support of the jurisdictional allegations in its motion for third-party joinder of Linden-Alimak. The

stant case both legally and factually distinguishable from the Third Circuit *Gorso* decision. As *Gorso* was the primary basis of my previous ruling denying extraterritorial service of process under the former statute, I now conclude that process may properly be served upon Linden-Alimak under the new "long-arm" statute as it is "doing business" within Pennsylvania according to the requirements of Section 8309(a)(3).

As noted earlier, the "series . . . or single act" requirement of "systematic and continuous conduct" no longer applies to the direct or indirect shipment of merchandise as the new statute, Section 8309(a)(3), makes such shipment an independent form of "doing business." In terms of precedential value, this statutory change is critical since the touchstone of *Gorso* was the "systematic and continuous conduct" requirement of "doing business." The removal of that requirement from the "direct or indirect shipment" language of the new law obviates the controlling influence of *Gorso* in the interpretation of that language.

Furthermore, significant factual distinctions between this case and *Gorso* warrant departure from that precedent in the instant matter. Linden-Alimak markets its products in the eastern and central United States through Heede International, its exclusive sales agent for that area. In *Gorso*, a similar distribution arrangement was employed.[4] However, the agency arrangement in that case was terminated before the cause of action arose.[5] Consequently, the *Gorso*

court held that the in-state activities of the terminated agent could provide no basis for concluding that the foreign defendants were "doing business" within the state through an agent. *Gorso, supra*, 476 F.2d at 1222. In sharp contrast to *Gorso*, the agency relationship in the instant case between Linden-Alimak and Heede was in effect at the time the cause of action arose and continues in effect to this date. Therefore, the in-state activities of Heede can be fully utilized to demonstrate that Linden-Alimak is "doing business" within Pennsylvania through an agent. In itemizing those activities the affidavit of Heede states that from 1964 to the present time nineteen Linden-Alimak cranes were sold *in* Pennsylvania pursuant to the distribution arrangement between Linden-Alimak and Heede.[6] The *Gorso* court took pains to point out that none of the defendants' cranes had been sold within the state either by the defendants themselves or through their former national sales agent.[7] *Gorso, supra*, 476 F.2d at 1222. Moreover, the court expressly stated that its ultimate factual ruling on jurisdictional insufficiency was "in the absence of a prior in-state sale." *Gorso, supra*, 476 F.2d at 1223. Applying this rationale to the instant case, a finding of "doing business" is justified even under the stricter *Gorso* test, *supra*, as Linden-Alimak cranes have been sold by Heede on a "systematic and continuous" basis within this state. *A fortiori*, these in-state sales clearly constitute "doing business" under the more liberal "direct or indirect

affidavit was filed subsequent to my ruling dismissing the action as to Linden-Alimak.

4. In *Gorso*, jurisdiction was sought over two French companies. One manufactured tower cranes while the other was its exclusive world sales agent. At one time, these companies marketed their cranes in the United States through a national sales agent. One of the cranes sold by that agent in the United States caused injury in Pennsylvania giving rise to the litigation. *Gorso, supra*, 476 F.2d at 1217–1218.

5. After terminating that arrangement, the *Gorso* defendants did not appoint a new na-

tional distributor. *Gorso, supra*, 476 F.2d at 1222.

6. It should also be noted that these sales were evenly dispersed over the ten year period.

7. For example, the crane immediately involved in Gorso had been sold by the national sales agent *to* a Kansas corporation and delivered to a jobsite in Ohio. Thereafter, it was transferred into Pennsylvania for use at a new jobsite. *Gorso, supra*, 476 F.2d at 1217–1218.

shipment" requirements of Section 8309(a)(3).

With this finding of "doing business" under Section 8309(a)(3), Linden-Alimak is amenable to service under Section 8302(a) "in *any* action arising within this Commonwealth." Consequently, it is statutorily irrelevant whether the particular crane which allegedly caused injury in this case was one of the nineteen sold within the state.

### 3. CONSTITUTIONAL DUE PROCESS

█ Linden-Alimak contends that the exercise of jurisdiction over it under the Pennsylvania "long-arm" statute constitutes a denial of due process of law. I disagree. In the classic decision of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated that due process does not prohibit the extension of jurisdiction over a nonresident when that nonresident has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" -326 U.S. at 316, 66 S.Ct. at 158. Although the existence of such contacts must depend on an *ad hoc* factual assessment in each case, the relevant inquiry in making that determination was crystallized in a later Supreme Court case, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Chief Justice Warren stated:

> [t]he application of that [minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

357 U.S. at 253, 78 S.Ct. at 1240.

█ In applying this standard to the facts of the instant case, the Constitutional requisites of due process are clearly satisfied. The record indicates that over the past ten years, Linden-Alimak cranes (nineteen in number) have been systematically marketed and sold within this state via that company's United States sales agent. To this extent, Linden-Alimak has purposefully availed itself of the privilege of conducting activities within this state. Moreover, in conducting these in-state commercial transactions, defendant has reaped the benefits and enjoyed the protections of Pennsylvania law. Consequently, it can hardly be said to be inequitable or unreasonable to require defendant to submit to the jurisdiction of the courts of this state after it has voluntarily engaged in substantial business activity within it.

In Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), jurisdiction over a nonresident was held constitutionally permissible even though the cause of action arose from activities performed outside the forum and entirely distinct from the in-state activities which established the requisite "minimum contacts." In the instant case, therefore, it is constitutionally irrelevant whether the particular crane in issue was one of the nineteen cranes sold within the state in assessing the propriety of *in personam* jurisdiction. Moreover, on its facts, the instant case is less offensive in terms of due process than *Perkins* since Benn's cause of action against Linden-Alimak arose within the State of Pennsylvania. (The collapse of the crane and resulting injury occurred at a Philadelphia jobsite). Therefore, reliance on the rule of *Perkins* is clearly appropriate in the instant case.

As a result of this ruling, *in personam* jurisdiction over Linden-Alimak is statutorily authorized under Section 8309(b), in addition to Section 8302(a), of the new "long-arm" statute. Section 8309(b) states:

> In addition to the provisions .of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all for-

eign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

The motion of Linden-Alimak to dismiss the complaint for lack of jurisdiction over the person will therefore be denied and dismissed.

### 4. TIMELINESS OF RE-SERVICE.

Although the extraterritorial service in July, 1973 was authorized under the new Pennsylvania "long-arm" statute and the United States Constitution, the defendant argues that the Pennsylvania statute of limitations bars plaintiff's cause of action since service of process was not perfected within two years after the filing of the complaint. Initially, it is necessary to outline the relevant Pennsylvania law on this issue as defendant misstates the law.

■ The Pennsylvania statute of limitations requires that personal injury actions of the type here involved be commenced within two years from the time the cause of action arises. Pa.Stat. tit. 12 § 34. Under Rule 1007 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, an action may be commenced by filing a praecipe for a writ of summons, a complaint or an agreement for an amicable action. Accordingly, the doing of any of these acts constitutes "commencement" of an action sufficient to toll the statute of limitations. *E.g.*, Ehrhardt v. Costello, 437 Pa. 556, 558, 264 A.2d 620 (1970) (writ of summons); Rufo v. Bastian-Blessing Company, 420 Pa. 416, 418, 218 A.2d 338 (1966) (complaint). A related but *separate* provision is Rule 1010(b) of the Pennsylvania Rules of Civil Procedure which allows reissuance of a writ and reinstatement of a complaint at any time and any number of times. Despite the express wording of Rule 1010(b), a limitation period for reissuance of a writ and reinstatement of a complaint was judicially promulgated by the Pennsylvania Supreme Court. Under this judicial rule, when suit is commenced by a writ of summons and the summons is is-

sued but not served, the plaintiff must act to reissue the writ within a period of time which, measured from the date of original issuance of the writ, or the date of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for bringing the action. Zarlinsky v. Laudenslager, 402 Pa. 290, 294–295, 167 A.2d 317 (1961). When suit is commenced by the filing of a complaint, the reinstatement of the complaint is restricted by a similarly computed limitation period measured from the filing date of the original or subsequently reinstated complaint. *Rufo, supra*, 420 Pa. at 418, 218 A.2d 338. Once the limitation period expires, the judicial rule prohibits reissuance of the writ or reinstatement of the complaint and consequently the plaintiff's cause of action will be barred. *Zarlinsky, supra*, 402 Pa. at 297, 167 A.2d 317; *Rufo, supra*, 420 Pa. at 418, 218 A.2d 338.

■ Before reaching the choice of law questions in this case, it is appropriate to assess the validity of defendant's argument solely under Pennsylvania law. The applicable statute of limitations period is two years. Plaintiff's cause of action arose on February 22, 1968 and this suit was timely commenced according to the Pennsylvania Rules of Civil Procedure by the filing of the complaint on February 20, 1970. The filing of the complaint tolled the statute of limitations and, contrary to defendant's contention, there is no requirement under the statute of limitations that service of process be perfected within two years after the filing of the complaint. Thus, under Pennsylvania law, plaintiff's suit is not barred by the statute of limitations.

■ Although it is unclear whether Pennsylvania courts would so hold under the circumstances of this case, an argument for dismissal could be made on the basis of the separate Pennsylvania judicial rule on reinstatement of complaints. On May 25, 1973, the complaint as to Linden-Alimak was dismissed after the return of service on that defendant

was quashed. On June 22, 1973, plaintiff moved for re-service under the new "long-arm" statute. Assuming that this motion for re-service could be properly analogized to "reinstatement" of a complaint under the Pennsylvania Rules of Civil Procedure, the judicial rule on reinstatement would invalidate the motion and the service pursuant to it since the judicial limitation period for complaint reinstatement expired February 20, 1972.

To complete this preliminary discussion, it is necessary to conduct a similar analysis of relevant federal law. Rule 3 of the Federal Rules of Civil Procedure states that "a civil action is commenced by filing a complaint with the court." Thus, under the Federal Rules, the filing of a complaint constitutes "commencement" of an action sufficient to toll the statute of limitations. Newhart v. George F. Hellick Coffee Company, 325 F.Supp. 1047, 1048 (E.D.Pa.1971); Elizabethtown Trust Company v. Konschak, 267 F.Supp. 46, 48 (E.D.Pa.1967). Unlike Pennsylvania procedure, the Federal Rules do not provide for nor do they require, either expressly or by judicial construction, the reinstatement of complaints. Furthermore, there is no provision for institution of an action by the filing of a praecipe for a writ of summons. Consequently, there is no requirement to reissue a summons within a specified period to "keep the action alive." The Federal Rules have been interpreted, however, to require plaintiff to exercise due diligence in securing issuance and service of the summons after the filing of the complaint, Sylvestri v. Warner & Swasey Co., 398 F.2d 598, 606 (2d Cir. 1968); Newhart, supra, 325 F.Supp. at 1048; Elizabethtown, supra, 267 F.Supp. at 48, and the question of due diligence is to be determined by the court on a case by case basis. Id.

Applying federal law to the facts of this case, it is clear that plaintiff's suit was "commenced" within the two-year statute of limitations period by the filing of his complaint on February 20, 1970. Thus, there is no variation in outcome between the Federal and Pennsylvania Rules of Civil Procedure with respect to the timely commencement of this suit under the statute of limitations. However, under the Federal Rules the re-service in July, 1973 is valid absent a finding that plaintiff failed to exercise due diligence in securing that service. As already explained, under Pennsylvania law, plaintiff's re-service would be automatically barred as the complaint was not "reinstated" within the judicially imposed two-year limitation period. The critical issue is whether this court, as a federal court sitting in a diversity case, must apply the procedural rule promulgated by the Pennsylvania Supreme Court which requires reinstatement of complaints within a specified period.

In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the United States Supreme Court held that federal courts must apply state "substantive" law in those cases where jurisdiction over the subject-matter is based solely on diversity of citizenship. Specifically, that case held that state statutes of limitations are "substantive" laws and must be followed by federal courts. Clearly, then, the Pennsylvania statute of limitations should be applied. Whether the Pennsylvania judicial rule on reinstatement of complaints must also be applied as a substantive portion of the State statute of limitations is undoubtedly the more difficult question.

In resolving this question, the Supreme Court decision in Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), is initially relevant. In that case the Supreme Court required application of the Kansas statutory definition of "commencement" of an action rather than the definition of "commencement" under Federal Rule 3 in determining when the Kansas statute of limitations was tolled. The Court held that the Kansas "commencement" stat-

ute was an "integral part" of that state's statute of limitations and under the principles of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Guaranty Trust, supra*, the "commencement" statute should be applied to avoid inconsistent treatment of a state-created cause of action in federal and state courts. Although the situation in *Ragan* is analogous to the instant case, two major factual discrepancies between the cases eliminate the precedential significance of *Ragan*. *Ragan* involved the application of a state "commencement" statute. In this case, the defendant seeks not to apply the Pennsylvania "commencement" provision, Rule 1007 of the Pennsylvania Rules of Civil Procedure, but rather a judicially promulgated rule on reinstatement of complaints. *Ragan* expressed no opinion as to such rules and speculation by this court would be inappropriate. However, even if I were to conclude that *Ragan* properly extends to the Pennsylvania judicial rule, the instant case does not satisfy an essential ingredient of the *Ragan* holding. In *Ragan* there was a specific finding that the Kansas "commencement" statute was an "integral part" of the state statute of limitations. With respect to the instant case, there is no definite indication that the Pennsylvania Supreme Court considers the rule in question an "integral part" of the statute of limitations. In *Zarlinsky, supra,* the Pennsylvania Supreme Court noted that the statutory period of limitations was important only "by analogy" as the judicial rule's limitation period was measured in each case by the period required by the applicable statute of limitations. *Id.*, 402 Pa. at 294–295, 167 A.2d 317. This "analogous" relationship is hardly adequate basis for holding that the judicial rule is an "integral part" of the Pennsylvania statute of limitations.[8]

Based on these factual differences, *Ragan* is clearly distinguishable from the instant case and consequently does not support defendant's contention that the Pennsylvania rule must be followed. It should be noted that even if *Ragan* were construed to necessitate application of the Pennsylvania rule, it is questionable whether strict adherence to *Ragan* would be justified in view of the subsequent Supreme Court decision of Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Many courts have refused to follow *Ragan* feeling that *Hanna* substantially modified *Ragan*. Sylvestri v. Warner & Swasey Co., 398 F.2d 598 (2d Cir. 1968); Meredith v. Glamorene Products Corporation, 55 F.R.D. 397 (E.D.Wis.1972); Alford v. Whitsel, 52 F.R.D. 327 (N.D.Miss.1971); Wheeler v. Standard Tool and Manufacturing Company, 311 F.Supp. 1177 (S.D.N.Y.1970); Grabowski v. United States, 294 F.Supp. 421 (D.Wyo.1968); Callan v. Lillybelle, Ltd., 39 F.R.D. 600 (S.D.N.Y.1966); Newman v. Freeman, 262 F.Supp. 106 (E.D.Pa.1966). Other courts, however, emphasize that *Hanna* failed to expressly overrule *Ragan* and therefore *Ragan*, although difficult to reconcile with *Hanna*, must be followed by the lower federal courts. Anderson v. Papillion, 445 . F.2d 841 (5th Cir. 1971); Groninger v. Davison, 364 F.2d 638 (8th Cir. 1966); Sylvester v. Messler, 351 F.2d 472 (6th Cir. 1965). Fortunately, I need not assess the legal viability of *Ragan* as that case is inapposite to the instant case. In view of this determination, resolution of the issue *sub judice* must rest solely on the controlling principles of *Hanna*.

▮▮▮▮▮ Although the general choice of law rule requires federal courts to apply state "substantive" law according the "outcome-determinative" test of *Erie* and its progeny, Chief Justice Warren, writing for the Court in *Hanna*, stated that the "outcome-determinative" test

---

8. In this regard, *see* Chappell v. Rouch, 448 F.2d 446 (10th Cir. 1971), where the Tenth Circuit, the circuit from which *Ragan* originated, similarly distinguished *Ragan* by holding that the new Kansas "commencement" statute was not an "integral part" of the new Kansas statute of limitations. *Id.* at 448–450.

was inapplicable where a federal rule covered a point in dispute. *Hanna, supra,* 380 U.S. at 469–470, 85 S.Ct. 1136, 14 L.Ed.2d 8.

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Id.* at 471, 85 S.Ct. at 1144 (footnote omitted).

As per the instant case, this holding clearly mandates application of the Federal Rules rather than the Pennsylvania judicial rule in measuring the timeliness of plaintiff's re-service on Linden-Alimak. Under the Federal Rules, the filing of a complaint is sufficient to toll the statute of limitations and thereafter plaintiff need only exercise due diligence in securing issuance and service of the summons. The Rules do not require reinstatement of a complaint or reissuance of a summons within a specified period. Although the Pennsylvania judicial rule imposes these additional requirements, the Federal Rules supersede the state rule and render it inapplicable in the disposition of this case.

Applying the Federal Rules to the instant case, plaintiff's action was timely commenced within the statutory period by the filing of his complaint. The filing of the complaint tolled the statute of limitations and thereafter plaintiff was required to exercise due diligence in securing issuance and service of the summons. The record indicates that plaintiff satisfied this duty. Summons was originally issued on February 20, 1970 and service on Linden-Alimak was completed on March 16, 1970. Although challenged by Linden-Alimak, that service was upheld by this court on April 30, 1971. For reasons previously noted, this court, on May 25, 1973, vacated its prior order of April 30, 1971 and quashed the original service on Linden-Alimak. On June 27, 1973, this court authorized re-service on Linden-Alimak pursuant to plaintiff's petition of June 22, 1973. That service was completed on July 31, 1973.

Notwithstanding the three and one-half year time period between the filing of the complaint and the ultimate service of the new summons (February 20, 1970–July 31, 1973), plaintiff has not breached his duty of due diligence. In Elizabethtown Trust Company v. Konschak, 267 F.Supp. 46 (E.D.Pa.1967), re-service was similarly attempted after the original service was quashed. The subsequent service was not permitted, though, as the court found no justification under the circumstances for the five-year time lag between the filing of the complaint and the ultimate service of the new summons. Although factually related, the instant case is significantly different. In *Elizabethtown*, the applicable "long-arm" statute required the mailing of a copy of the summons and complaint to the defendant after service upon the Secretary of the Commonwealth. The copy was erroneously mailed to the wrong address and never delivered. Consequently, the service was defective and, upon motion of defendant, was duly quashed. Re-service thereafter by plaintiff was denied under the due diligence standard. The court stressed that plaintiff had continual notice of the nondelivery of the original service yet took no action to correct this flaw and perfect service. Moreover, no evidence was presented indicating that the defendant was aware of the pendency of the action during the interim years. In the instant case, this element of negligent inaction is absent. Plaintiff promptly secured issuance and service of the original summons within one month of the filing of his complaint. Furthermore, the later order to quash was not prompted by any non-diligent conduct of plaintiff. It was based on the want of a showing of sufficient jurisdictional facts

to sustain service under the applicable "long-arm" statute. More importantly, because the original summons was actually served upon Linden-Alimak, it is clear that the defendant received timely notice of the pendency of the instant suit. As per the new summons, it must be noted that the order to quash the original summons vacated a previous order upholding the validity of that original service, a fact not present in *Elizabethtown*. Therefore, plaintiff had no reason, prior to the vacating order, to re-serve defendant and it would be inequitable to penalize plaintiff for delaying re-service in reliance on the earlier order. Within a month of the vacating order, plaintiff moved for re-service which was consummated in the succeeding month by service on Linden-Alimak. Based on these facts, it cannot be said that plaintiff failed to satisfy his duty of due diligence in securing issuance and service of the new summons. The re-service authorized by this court on June 27, 1973 is, therefore, timely under the Federal Rules of Civil Procedure.