Kitzinger *v.* Gimbel Brothers, Inc.
(et al., Appellant).

Argued November 17, 1975. Before WATKINS, P. J., HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (JACOBS, J., absent).

*Will J. Bangs*, with him *H. W. Turner, David Klaber, Owen S. Walker*, and *Kirkpatrick, Lockhart, Johnson & Hutchison*, and *Choate, Hall & Stewart*, for additional defendant, appellant.

*George I. Buckler*, with him *Meyer, Darragh, Buckler, Bebenek & Eck*, for appellee.

OPINION BY HOFFMAN, J., April 22, 1976:

In January, 1973, the minor plaintiff in the action which gives rise to this appeal sustained serious injuries when his pajamas caught fire. The minor plaintiff and his parents sued Gimbel Brothers, Inc., ("appellee," herein), the seller of the pajamas. Appellee moved to join the supplier of the pajamas, Textile Alliance, Ltd., ("appellant," herein), as an additional defendant. Appellant, a Hong Kong concern with no offices in the United States, raised preliminary objections to personal jurisdiction under the Pennsylvania "long-arm" statute. The lower court dismissed the objections and this appeal followed. We agree that the court has jurisdiction over appellant and, therefore, affirm.

For purposes of this appeal, the operative facts are not in dispute. Plaintiffs below filed a complaint against appellee based on appellee's negligence and on §402A of the Restatement of Torts (Second), alleging that the pajamas were defective because they were not flame-resistant. In April, 1974, the lower court granted appellee leave to join appellant as an additional defendant. See Pa.R.C.P. 2253. Appellee alleged that appellant manufactured[1] and sold the pajamas to appellee and that appellee would, therefore, be entitled to indemnification or contribution if appellee were found liable for minor plaintiff's injuries.

---

1. The lower court stated in its opinion that appellant was a manufacturer of pajamas. Appellee concedes that appellant in fact does not manufacture garments, but acts only as a consolidator for smaller manufacturers. That distinction has no relevance to our resolution of the instant case. See discussion infra.

Service of process was made pursuant to Pennsylvania's "long-arm" statute, Act of November 15, 1972, P.L. 1063, No. 271, §8301 et seq.; 42 Pa.C.S. §8301, et seq. (Supp. 1975-76), (a) by serving the summons and complaint upon the Secretary of the Commonwealth; (b) by mailing the summons and complaint by certified mail to appellant's offices in Hong Kong; and (c) by mailing the summons and complaint by certified mail to appellant, c/o British Mist, Inc., at British Mist's New York offices.[2]

After pretrial discovery was completed, appellant filed preliminary objections on November 27, 1974. The lower court dismissed the objections on December 13, 1974. Appellant challenges that order, appealable by virtue of the Act of March 5, 1925, P.L. 23, §1; 12 P.S. §672. See also, *Action Industries, Inc. v. Wiedeman*, 236 Pa. Superior Ct. 447, 346 A.2d 798 (1975).

The resolution of this appeal turns on §§8302 and 8309 of the "long-arm" statute which provide that: "8302(a) ... Any foreign corporation *which shall have done business* in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney as authorized to accept, on its behalf, service of process in any action arising within this Commonwealth..." (Emphasis added). Section 8309 defines "doing business", *inter alia*, as "(3) The shipping of merchandise directly or indirectly into or through this Commonwealth."

In depositions and in argument before the lower court, the parties focused on appellant's business relationship with appellee. The record indicates that appellant, a foreign corporation with its base of operation

---

2. Attempted service on British Mist was concededly improper because the two companies had no connection.

in Hong Kong, has been one of appellee's major suppliers of pajamas under the label of "Gimbelbilt" since 1964. Appellee's representatives periodically visited appellant in Hong Kong in order to negotiate quantity and quality of the goods to be purchased. The actual contracts were entered into between appellant and F. R. Gabbott & Company, Ltd., ("Gabbott," herein), a corporation with its principal place of business in Hong Kong which acted as appellee's purchasing agent. The normal contract between Gabbott and appellant provided for the total quantity of each item and for the number of cartons in which those items were to be packed. Appellant was then required to mark each box for the final destination — a specific Gimbel's store in New York, Philadelphia, Pittsburgh, or Milwaukee. More than half of the pajamas were shipped to appellee's stores in Pennsylvania. The goods were sold f.o.b. Hong Kong. Appellant delivered the goods to a truck carrier which, in turn, transported the goods to the port of Hong Kong for shipment to the United States. Gabbott made arrangements for the shipment of the goods from Hong Kong to the United States. Gabbott was responsible for billing and receiving payments from appellant.

The foregoing transactions represent appellant's only contacts with Pennsylvania. Appellant has never had any offices, property or a phone listing in the United States. It has never been issued any permit or license to do business in the United States. Nor has it employed sales personnel to solicit business in Pennsylvania.

The history of Pennsylvania's "long-arm" statute indicates a legislative effort to broaden *in personam* jurisdiction over foreign corporations to the fullest extent permissible under the Due Process Clause of the Constitution. Section 8309(b) provides that "...the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the

Constitution of the United States."[3] See also, *Parise v. AAA Warehouse Corporation*, 384 F.Supp. 1075 (W.D. Pa. 1974); *Image Ten, Inc. v. Walter Reade Organization, Inc.*, 456 Pa. 485, 322 A.2d 109 (1974); *Proctor & Schwartz v. Cleveland Lumber Co.*, 228 Pa. Superior Ct. 12, 323 A.2d 11 (1974). In addition, in *Deere v. Zilber*, 234 Pa. Superior Ct. 273, 278, 338 A.2d 615, 618 (1975), we stated that "[t]he Long-Arm Statute was passed after the adoption of the Restatement of Torts (Second) §402A (1965), and, therefore, ... substantiates the inference that the legislature intended to make amenable to Pennsylvania jurisdiction those foreign corporations whose products cause damage or injury in Pennsylvania, however circuitous their distributive chain may be." Thus, we must engage in a two step inquiry: (1) do appellant's activities amount to "doing business" within Pennsylvania; and, if so, (2) does that finding comport with due process.

Initially, we have little difficulty holding that appellant's activity amounted to "doing business" in Pennsylvania for purposes of §8302 by virtue of appellant's making "indirect" shipments of goods into Pennsylvania. The record is clear that appellant was a major participant in a large volume chain of distribution. Further, although not a manufacturer, appellant was the consolidator for numerous local manufacturers. As such, appellant may ultimately be held liable under §402A. See *Wilk v. Ensign-Bickford Co.*, 421 Pa. 161, 218 A.2d 778 (1966); see also, *Deere v. Zilber*, supra at 278, 338 A.2d at 618: *"Wilk* ... held that a foreign corporation which

---

3. This amendment culminated a halting expansion of jurisdiction. "The 1972 amendments to the Pennsylvania 'long-arm' statute seek to remove all Pennsylvania statutory and, therefore, decisional impediments to the exercise of in personam jurisdiction over foreign corporations." *Proctor & Schwartz v. Cleveland Lumber Co.*, 228 Pa. Superior Ct. 12, 17, 323 A.2d 11, 14 (1974). See also, *Parise v. AAA Warehouse Corporation*, 384 F. Supp. 1075 (W.D. Pa. 1974).

places a defective instrumentality into the stream of commerce, causing an injury in Pennsylvania, is not insulated from answering in our courts when assets are available for attachment here. A foreign corporation should be similarly prepared to answer in our courts for injuries caused, even if its assets are not by chance located here." Packaging and labelling large quantities of goods and directing those goods to international carriers is unquestionably an "indirect" shipment of goods under §8309.[4]

Appellant contends that an "indirect" shipper must also be the manufacturer of the goods: "...the courts, including the Pennsylvania courts, which have adopted the 'stream of commerce' theory ... have applied it only to manufacturers who place a product into the channels of commerce." First, our statute makes no such distinction between manufacturers and distributors of goods. Second, our view of the case law does not support appellant's alleged distinction. Obviously, the manufacturer is frequently the defendant in products liability cases. See, e.g., *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir. 1969), *Benn v. Linden Crane Co.*, 370 F.Supp. 1269 (E.D. Pa. 1973). But courts have extended the "long-arm" statute to distributors and other parties in the commercial chain. See, e.g., *Parise v. AAA Warehouse Corporation*, supra, (defendant loaded grain belonging to Jefferson Wholesale Grocery Company into a freight car belonging to Penn Central Railroad in Indianapolis; jurisdiction was found

---

4. Cf. "A shipment of goods indicates a conscious placement of those goods into the stream of commerce. Obviously, if a manufacturer sells his products directly to the ultimate consumer, the movement of those goods pursuant to the sale would be a direct shipment. However, economic and business reasons dictate that goods will pass through any number of people in a distributive chain before they reach the ultimate consumer. It is the movement of goods through this distributive chain that in this case constitutes an 'indirect shipment.'" *Benn v. Linden Crane Co.*, 326 F. Supp. 995, 997 (E.D. Pa. 1971).

to be proper under Pennsylvania's "long-arm" statute); *Image Ten, Inc. v. Walter Reade Organization, Inc.,* supra, (defendant was a distributor of films located outside of Pennsylvania; exercise of jurisdiction was found proper). Third, as discussed, the expansion of *in personam* jurisdiction has paralleled the extension of protection of consumers of defective goods under §402A. The Restatement permits recovery against any seller in the distributive chain. Thus, policy considerations suggest that *in personam* jurisdiction, as far as permissible under due process, should be concomitant with the scope of §402A. Therefore, we reject appellant's contention that the Pennsylvania "long-arm" statute contemplates inclusion only of manufacturers and not distributors.

Thus, the instant case turns on whether *in personam* jurisdiction exercised by Pennsylvania over appellant offends due process. The concepts relating to the extension of personal jurisdiction were summarized in *Proctor & Schwartz v. Cleveland Lumber Co.,* supra, at 18-19, 323 A.2d at 14-15: "In the first landmark case of *in personam* jurisdiction the Supreme Court rejected fictional jurisdictional bases such as presence and implied consent, and held that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

"In *McGee v. International Life Insurance Co.,* 355 U.S. 220 (1957), the Supreme Court in establishing the breadth of the due process clause held that the exercise of jurisdiction based upon the issuance of a single insurance contract in the forum state was not constitutionally impermissible. But a year later the Court suggested that the due process clause requires a

defendant to have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws.' *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"These decisions provide only a framework under the broad formula of 'fair play and substantial justice' and a determination of whether or not the 'minimum contacts' of a foreign corporation with a particular state are sufficient to make the corporation constitutionally amenable to process in that state must inevitably be made on an ad hoc case-by-case basis and not by the application of a mechanical rule. *Campbell v. Triangle Corp.*, 336 F.Supp. 1002 (E.D. Pa. 1972).

"However, we can find certain guidelines which aid in the factual analysis necessary to make the determination of whether the requisite 'minimum contacts' are present in a given case. First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its law. *Hanson v. Denckla*, supra. Secondly, the cause of action must arise from defendant's activities within the forum state. See *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F. 2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550 (D. Conn. 1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington*, supra; see *Southern Mach. Co. v. Mohasco Indus., Inc.*, supra; see also *Inflight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.*, 313 F.2d 769 (9th Cir. 1963)." See also, *Parise v. AAA Warehouse Corporation*, supra; *Benn v. Linden Crane Co.*, supra; *Action Industries, Inc. v. Wiedeman*, supra.

We find that the three pronged test articulated in *Proctor & Schwartz*, supra, is met in the instant case. The appellant acted through appellee's representative, Gab-

bott, a middleman, and sold the goods f.o.b. Hong Kong. Nonetheless, the record is clear that appellant knew that the goods it sold to appellee were intended for use in Pennsylvania. See *Duple Motor Bodies, Ltd. v. Hollingsworth,* supra. The goods did not arrive in Pennsylvania fortuitously. Cf. *Benn v. Linden Crane Co.,* supra, (despite the fortuitous arrival of the defendant's crane into Pennsylvania jurisdiction was nonetheless proper). That is, appellant knowingly directed goods to Pennsylvania, despite the technicalities engendered by the use of a middleman as buying agent.

Second, appellant does not argue that the plaintiff's cause of action arose elsewhere than Pennsylvania. Appellant does contend, however, that it has been joined by appellee for purposes of indemnification, and, therefore, the policy underlying a broad jurisdictional statute — protection of citizens of the forum — does not apply: "Since [appellee] is not a Pennsylvania corporation and its principal place of business is not in Pennsylvania, and since [appellant] conducts no business activities in Pennsylvania, we fail to see where Pennsylvania has a sufficient interest in the dispute between [appellee and appellant] to assert jurisdiction over [appellant] solely to provide a forum for [appellee] to assert its claim of contribution and/or indemnity against [appellant]." As discussed above, however, appellant may ultimately be found liable under §402A; that is, the plaintiffs may eventually recover from appellant if the factfinder holds that appellant was the tortfeasor.

Finally, by virtue of the vast number of pajamas shipped into Pennsylvania, appellant received significant benefits and protection of the laws of this forum. Therefore, we find substantial connection between appellant and this Commonwealth to meet the "minimum contacts" requirements of the due process clause. *International Shoe Co.,* supra.[5]

---

5. Appellant raises the following problem in its brief: "A

Therefore, we find that the lower court correctly denied appellant's preliminary objections. Order affirmed.

JACOBS, J., did not participate in the consideration or decision of this case.

shopkeeper in Hong Kong (or Rangoon or Bombay) displays for sale certain curios manufactured by artisans of his locality. A local purchaser buys 50 of the objects as agent for Gimbel's and instructs the tradesman to ship them to Pittsburgh, Pennsylvania. One of the curios is alleged to cause injury to a purchaser from Gimbel's. Under the holding of the court below, Gimbel's would be permitted to cause the shopkeeper to secure counsel and enter his defense on the other side of the world. Such a result is inconsistent with accepted concepts of fairness." Appellant's hypothetical raises a serious problem. We emphasize that in instances in which we must consider the extent of jurisdiction under the long-arm statute and due process, we consider the facts on a case-by-case basis. Further, we underscore the fact that Pennsylvania's statute treats individuals and foreign corporations differently for purposes of jurisdiction. See *Action Industries, Inc. v. Wiedeman*, supra. Finally, built into the due process test is consideration of benefits and, therefore, fairness of the burden derived by the seller of a product from the forum state.