SUNN CLASSIC PICTURES, INC.

v.

BUDCO, INC.

v.

RAY HACKIE, INC.

Civ. A. No. 79–369.

United States District Court,
E. D. Pennsylvania.

Oct. 2, 1979.

Sheryl L. Auerbach, Philadelphia, Pa., for plaintiff.

Harry Norman Ball, Philadelphia, Pa., for defendant.

Bancroft D. Haviland, Philadelphia, Pa., for third-party defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the motion of third-party defendant Ray Hackie, Inc. ("Hackie"), to dismiss the third-party complaint of Sunn Classic Pictures, Inc. ("Sunn"), for lack of *in personam* jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. For all of the following reasons, the motion to dismiss will be denied.

This action concerns a suit by Sunn, a motion picture film distributor incorporated in Delaware, against Budco, Inc. ("Budco"), a film theater chain incorporated in Pennsylvania, for rental fees allegedly due for the exhibition of the motion picture "Beyond and Back" at theaters owned by Budco. Budco responded with a counterclaim against Sunn, alleging injuries suffered due to the alleged failure of Sunn to deliver a complete print of another film "The Lincoln Conspiracy" ("the film") to one of Budco's theaters in Pennsylvania. Sunn contends that Budco's failure to examine the incomplete print of the film, and to discover the inaccuracy, caused the injuries alleged. Subsequently, Sunn timely joined Hackie, a corporation with its principal place of business in Los Angeles, California, as a third-party defendant for any damages Budco might recover against Sunn based on the allegations contained in Budco's counterclaim. Sunn has also filed a counterclaim to Budco's counterclaim, admitting that the print of the film was incomplete but denying liability.

Hackie's factual and legal position in this suit is succinctly stated in its motion, which states:

Hackie is a California corporation which represents independent producers and distributors of motion pictures in the mounting, storage and preparation for delivery of film prints in the Los Angeles and San Francisco areas. Hackie also prepares film prints for shipping and delivers them, so prepared, to its customers. In this case, Hackie dealt with Technicolor, Inc., in California, which employed Hackie to mount and store prints of "The Lincoln Conspiracy" in California and then to deliver them to Comet Freight Systems, the agent for Sunn, in California. Hackie did not duplicate or ship a print of "The Lincoln Conspiracy" to the Southgate Theatre. Hackie only did business in California. Hackie has not done business in Pennsylvania, is not authorized to do business in Pennsylvania, and has never delivered or caused any

film prints to be delivered in this state. In short, Hackie has not had any contact with this jurisdiction.

Memorandum in Support of Motion to Dismiss for Lack of *In Personam* Jurisdiction Over the Third-Party Defendant, at 3.

The precise issue now before this Court is whether the Court has *in personam* jurisdiction over third-party defendant Hackie under the Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5301 *et seq.* (Purdon 1978), and whether such statutory jurisdiction is in accordance with the due process minimal contacts requirements of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and progeny.

Hackie's only contact with the Commonwealth was a letter it received on or about September 23, 1977, from Sunn notifying Hackie that prints of the film "The Lincoln Conspiracy" would be sent to various distribution services, including the Pittsburgh Film Service of McKees Rock, Pennsylvania. *See* Exhibit A, attached to Plaintiff's Answer to Third-Party Defendant's Motion to Dismiss. The Court finds this contact to be sufficient for the Court to exercise *in personam* jurisdiction over the third-party defendant under the Pennsylvania long-arm statute and also satisfies the due process requirement of minimal contacts within the forum state.

### A. *Statutory Requirements*

■ Section 5322(a)(4) of the Pennsylvania long-arm statute states:

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

*       *       *       *       *       *

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 Pa.C.S.A. § 5322(a)(4) (Purdon 1978).

In the instant action, the harm caused within the Commonwealth was the receipt of the incomplete print of the film by the Southgate Budco movie theater in Pennsylvania which was mounted and packaged by Hackie. The incompleteness of the print allegedly caused Budco to lose profits and injure its reputation due to its inability to show the scheduled film to the public. The act or omission of the defendant outside the Commonwealth occurred in California where Hackie allegedly failed to properly duplicate and mount on reels the master negative of the film prior to distribution. Therefore, this Court finds that § 5322(a)(4) is directly applicable in the instant action as to third-party defendant Hackie, thereby providing the Court with jurisdiction under the Pennsylvania long-arm statute.

### B. *Due Process Requirements*

Finding statutory jurisdiction, the Court is still faced with the question of whether the substantive due process requirement of minimal contacts, as set forth in *International Shoe Co. v. State of Washington*, *supra*, and progeny, is satisfied. If the requisite minimal contacts are shown, that will in turn provide this Court with a second jurisdictional basis under the Pennsylvania long-arm statute through § 5322(b), which provides:

(b) Exercise of full constitutional power over nonresidents.—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.C.S.A. § 5322(b) (Purdon 1978). *See Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130, 133 (M.D.Pa.1978).

■ The initial due process requirement under *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is whether the defendant has pur-

posefully availed itself of the privilege of doing business in the forum state. The test is whether business operations set in motion by a corporation "have a realistic impact on the state's commerce or otherwise were reasonably foreseeable consequences in that state." *Johnson, et al. v. Turner v. Newall, Ltd., et al.*, No. 78–464, slip op. at 4 (E.D. Pa., July 2, 1979). *See also Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382–383 & n.24 (6th Cir. 1968). In the instant action, Hackie, through the September 23, 1977, letter from Sunn, could have reasonably foreseen that its business activities would have an impact on Pennsylvania's commerce.

This is not a situation where goods arrived in Pennsylvania completely fortuitously or business activities involving Pennsylvania were clearly tenuous. *See Middle Atlantic States Engr., Inc. v. Camden City Municipal Utilities Authority*, 426 F.Supp. 299, 300–301 (E.D.Pa.1977); *Kitzinger v. Gimbel Bros., Inc.*, 240 Pa.Super. 345, 355, 368 A.2d 333 (1976).

As the court in *Johnson, supra*, stated: A foreign corporation which knowingly introduces an allegedly dangerous instrumentality into the stream of commerce flowing into Pennsylvania should not be insulated by narrow notions of "doing business" from answering in this state's courts. This is true even if the shipment was made F.O.B. at some point outside the state. *See Hicks v. Kawasaki Heavy Industries, supra; Crucible, Inc. v. Stora Kopparbergs Bergslags A.B.*, 403 F.Supp. 9 (W.D.Pa.1975); *Kitzinger v. Gimbel Bros., Inc.*, 240 Pa.Super. 345, 368 A.2d 333 (1976); *Deere v. Zilber*, 234 Pa.Super. 273, 338 A.2d 615 (1974).

Slip op. at 4 (footnote omitted).

Hackie knew that the film prints would be distributed in Pennsylvania by the clear notice it received in the September 23, 1977, letter from Sunn. Furthermore, as the court in *Snyder v. The Harbor Sales Co., Inc., et al.*, No. 78–2541 (E.D.Pa., April 18, 1979), held:

. . . the exact commercial linkage may not have been known by the distant seller but, *by reason of normalcy of the manner in which the product was to be distributed, it was "reasonable" to expect that the manufacturer would have foreseen that the product would take such a course* before it came into the hands of the ultimate purchaser.

Slip op. at 3 (emphasis added).

■ Finally, Hackie's failure to directly ship or sell the goods itself to a Pennsylvania corporation is unimportant, since indirect shipment of goods into a forum state is sufficient to satisfy the minimal contacts requirement. *See Hicks v. Kawasaki Heavy Industries, supra*, 452 F.Supp. at 134; *Benn v. Linden Crane Co.*, 370 F.Supp. 1269, 1277 (E.D.Pa.1973); *Kitzinger v. Gimbel Bros., Inc., supra*, 240 Pa.Super. at 352, 368 A.2d 333.

Hackie refers this Court to the recent Pennsylvania Superior Court decision in *Davis v. C & NW Transp. Co., et al.*, 405 A.2d 959 (1979). In *Davis* an action was brought against an Illinois independent contractor who had loaded railway cars with automobiles under a contract with Chrysler Corporation. The railway cars were owned and controlled by C & NW Transportation Company. When one of the railway cars arrived in Pennsylvania, plaintiff sustained injuries unloading the railway car which was allegedly defective. The Superior Court held that the defendant had not purposefully availed itself of the benefits and protections of the laws of Pennsylvania and, therefore, the requisite due process minimal contacts were not established.

The *Davis* case can be distinguished from the instant action in several aspects. In *Davis*, the court clearly noted that the railway car in question was the only car which was loaded by the defendant that arrived in Pennsylvania. In the instant action, a total of three prints of the film made by Hackie arrived in Pennsylvania. Further, a different film, also mounted and packaged by Hackie for Sunn, arrived in Pennsylvania with the knowledge of Hackie. *See Inpaco, Inc. v. McDonald's Corp.*, 413 F.Supp. 415, 420 (E.D.Pa.1976) (other business activities with the Commonwealth involving unrelat-

ed matters to the instant action are still relevant for purposes of *in personam* jurisdiction).

Second, in *Davis*, the court noted that there was no evidence that the defendant actually knew that the railway car would arrive in Pennsylvania but that he might have "been aware that it would eventually be part of a train bound for Pennsylvania." The *Davis* court spoke of the arrival of the single railway car in Pennsylvania as a "peripheral occurrence." In the case at bar, Hackie clearly knew that the prints would be distributed in Pennsylvania, not that they "might" or "could" come to rest in Pennsylvania. The *Davis* case represents an example of the type of minimal contacts that are too fortuitous or tenuous that the courts in *Middle Atlantic States Engr., Inc. v. Camden City Municipal Utility Authorities, supra,* and *Kitzinger v. Gimbel Bros., Inc., supra,* spoke of as not comporting with due process requirements. It would be an entirely different matter if Hackie had not actually known where the prints would be distributed but only that they would be viewed nationwide. In that situation, Hackie's contact with any particular state in the Union, without more, would be too tenuous and fortuitous to satisfy the minimal contacts due process requirement.

The second prong of the due process test under *International Shoe* is that:

 .  .  .  .   The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

326 U.S. at 319, 66 S.Ct. at 160. As indicated previously, the harm here arose out of Hackie's alleged breach of its obligation to exercise due care in the mounting and packaging of the film prints, which allegedly caused injury to the business operations of a Pennsylvania corporation. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Orefice v. Laurelview Convalescent Center,*

*Inc.,* 66 F.R.D. 136, 139–140 (E.D.Pa.1975) (not required that business operations causing harm occur within the forum state).

Finally, this Court finds that considerations of "fair play and substantial justice" have been met. As third-party plaintiff Sunn correctly contends, the Pennsylvania courts have held that the requirements of fair play and substantial justice are more easily met in the case of a corporation than an individual. *See Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 455, 346 A.2d 798 (1975); *Stepnowski v. Avery,* 234 Pa. Super. 492–497, 340 A.2d 465 (1975). The test depends on the "quality and nature of the activity in relationship to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. State of Washington, supra,* 326 U.S. at 319, 66 S.Ct. at 160. As previously noted, the activity of the third-party defendant affecting the Commonwealth was not merely an isolated incident. Further, the purpose of the Pennsylvania long-arm statute is to protect its residents from injuries caused by foreign corporations doing business in Pennsylvania. *See Johnson v. Turner & Newall, supra,* slip op. at 5, *citing Hicks v. Kawasaki Heavy Industries, supra,* 452 F.Supp. at 134; *Deere v. Zilber,* 234 Pa.Super. 273, 277, 338 A.2d 615 (1974).

Finally, as stated by the court in *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* 358 F.Supp. 441 (E.D.Pa.1973):

The business of this Nation is rarely localized in this age of mass transportation and rapid communication. The growth of the conglomerate and of giant national and international industrial and economic enterprises and their involvement in every aspect of this country's affairs have broken down and, in many instances, obliterated both the import of state boundaries and the basic rationale which has, heretofore, limited the power of the states to acquire jurisdiction over business entities that engage in commercial activities with citizens of that state.

Furthermore, the traditional notions of "fair play" and "substantial justice" which are of immediate concern to us are not static and unchanging concepts to be applied in a mechanical fashion by the courts. Rather, they are formulations which must be defined in light of the constitutional, economic and social realities of the 1970's and not of an earlier decade in our history.

358 F.Supp. at 445.

The Court is aware of the possible hardship that litigation in this district might impose upon a California-based corporation, but the Court does not find it unfair or unjust. Hackie has voluntarily engaged in business activities it knew would directly affect the stream of commerce and residents of this Commonwealth, by introducing allegedly defective products into this state resulting in harm to a Pennsylvania corporation. In the equitable balance, this Court can only conclude that the requisite minimal contacts are evidenced in the instant action and that two separate statutory jurisdictional bases under § 5322(a)(4) and § 5322(b) are applicable. Therefore, this Court is provided with *in personam* jurisdiction over third-party defendant Hackie.

## C. *Subject Matter Jurisdiction*

█ Third-party defendant Hackie has recently submitted a supplemental motion and memorandum of law to this Court, raising the additional issue of whether this Court lacks subject matter jurisdiction over the third-party complaint of plaintiff Sunn against Hackie. The issue, simply stated, is whether the third-party claim of Sunn against Hackie satisfies the same legal test as is required in the analogous context of a compulsory counterclaim under Fed.R. Civ.P. 13(a), therefore, coming within the Court's ancillary jurisdiction; or, if not, whether the claim has an independent source of subject matter jurisdiction. *See Dugas v. American Sur. Co.*, 300 U.S. 414, 428, 57 S.Ct. 515, 81 L.Ed. 720 (1937); *Aldens, Inc. v. Packel*, 524 F.2d 38, 52 (3d Cir. 1975).

In *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3d Cir. 1961), the Third Circuit Court of Appeals set forth the operative question which courts must ask to determine if a claim is compulsory or permissive. The court stated:

We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. *Zion v. Sentry Safety Control Corp.*, 3 Cir., 1958, 258 F.2d 31. See also *United Artists Corp. v. Masterpiece Productions, Inc.*, 2 Cir., 1955, 221 F.2d 213, 216. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

286 F.2d at 634.

Furthermore, as the Third Circuit Court of Appeals recently held in *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057 (3d Cir. 1978), a third-party claim will lie within a court's ancillary jurisdiction if the court determines that the third-party claim and the principal claim involve:

. . . (1) many of the same factual issues; (2) the same factual and legal issues; or (3) where they are offshoots of the same basic controversy between the parties.

576 F.2d at 1059.

For all of the following reasons, this Court finds that the third-party complaint of Sunn against Hackie is logically related

**388**

to the counterclaim of Budco against Sunn, being part of the principal claim, and, therefore, is compulsory allowing this Court to exercise ancillary jurisdiction over that third-party claim irregardless of any independent jurisdictional basis.

Under the *Xerox* test, the third-party claim here is an "offshoot[ ] of the same basic controversy between the parties." 576 F.2d at 1059. Hackie's liability, if any, to Sunn is dependent on Sunn's liability, if any, to Budco; which all depends on whether it can be shown that the film "The Lincoln Conspiracy" was negligently packaged and shipped by Sunn, utilizing Hackie and others, to Budco. The same factual and legal issues predominate in both claims.[1] Those being, first, did Sunn, through Hackie and others, negligently, as a matter of law, package and ship an incomplete print of the film to Budco? Second, what action or inaction did Hackie take as to the duplicating and packaging of the film that might have caused an incomplete print of the film to be shipped? Both factual and legal issues are the essence of the counterclaim of Budco against Sunn and the third-party complaint of Sunn against Hackie.

Finally, as the Supreme Court recently held in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), where the impleader by a defendant (here Sunn as defendant to Budco's counterclaim) of a third-party defendant (Hackie), "[a] third-party complaint depends at least in part upon the resolution of the primary lawsuit . . . Its relation to the original complaint is thus not mere factual similarity but logical dependence." 437 U.S. at 376, 98 S.Ct. at 2404.

 Therefore, the Court finds that Sunn's third-party complaint against Hackie is ancillary to the principal claim between Budco and Sunn, thereby providing this Court with the requisite subject matter jurisdiction.[2]

---

1. It should be noted that there may be, as Hackie contends, factual issues that are different between the two claims. However, similar factual issues are evident and, under the test articulated in *Xerox*, if the claims involve "many of the same factual issues," that is sufficient to bring the claim within this Court's ancillary jurisdiction. 576 F.2d at 1059.

2. Hackie's further claim that venue is improper in this jurisdiction need not be addressed by the Court, since it is deemed waived by Hackie

for failure to timely raise the issue in its prior motion to dismiss pursuant to Fed.R.Civ.P. 12(h)(1)(A). Furthermore, the requisite contacts do exist with this forum for venue purposes because the injury to Budco occurred within this district due to the receipt of the incomplete film print here. *See Philadelphia Housing Authority v. Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260–261 (E.D.Pa. 1968).